# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOSHUA SADLER (#579492)**                                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                                       **NO. 14-0639-SDD-EWD**

## NOTICE

 Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

 In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

 ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

 Signed in Baton Rouge, Louisiana, on February 26, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JOSHUA SADLER (#579492)                                    CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.                                       NO. 14-0639-SDD-EWD

### <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Before the Court is the application of Petitioner Joshua Sadler for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons that follow, Petitioner's application should be denied.  There is no need for oral argument or for an evidentiary hearing.

### I. Procedural History

On December 23, 2008, Petitioner was charged by grand jury indictment in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, with one count of second-degree murder.  After a trial by jury conducted in September 2010, the jury found Petitioner guilty of the charged offense.  Upon the denial of post-trial motions, the trial judge sentenced Petitioner on October 21, 2010, to life imprisonment, without the benefit of probation, parole or suspension of sentence.

Petitioner pursued a direct appeal, arguing that his conviction pursuant to a non-unanimous jury verdict violated his rights under the United States and Louisiana Constitutions.   On June 10, 2011 the Louisiana Court of Appeal for the First Circuit affirmed Petitioner's conviction and sentence.  *State v. Sadler*, 2011 WL 3557836 (La. App. 1 Cir. June 10, 2011).  Petitioner sought further review before the Louisiana Supreme Court and, on March 23, 2012, that Court denied review, without comment.  *See State v. Sadler*, 85 So.3d 85 (La. 2012).  Upon the failure of

Petitioner to thereafter file an application for a writ of certiorari in the United States Supreme Court, his conviction and sentence became final on June 21, 2012 after expiration of the ninety-day period allowed for him to do so.   *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (recognizing that a conviction becomes final for federal purposes after the 90-day period allowed for a petitioner to proceed in the United States Supreme Court if he has not pursued such relief).[1]

On or about January 24, 2013,[2] Petitioner filed a *pro se* application for post-conviction relief ("PCR") in the state trial court.   Petitioner asserted therein (1) that his constitutional rights were violated by the use of statements and consents obtained during questioning by police in the hospital in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966), (2) that the prosecution engaged in misconduct during closing arguments by exceeding the scope of rebuttal and by referring to DNA evidence that had not been introduced during trial, and (3) that he was actually innocent of the charged offense under the Louisiana doctrine of self-defense.[3]   The State filed procedural

---

1      The State erroneously contends that Petitioner's conviction and sentence became final on March 23, 2012, the day that the Louisiana Supreme Court denied Petitioner's writ application. *See* R. Doc. 8 at p. 7.

2      Petitioner's application for post-conviction relief was signed and dated by Petitioner on January 24, 2013 and was stamped "Filed" in the state district court on February 11, 2013.   The United States Court of Appeals for the Fifth Circuit has instructed that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings.   Accordingly, pleadings submitted by a *pro se* habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for submission to the court, not on the date that the pleadings are ultimately received or docketed by the receiving court.   *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012).   Thus, although Petitioner's application was marked "Filed" in the district court on February 11, 2013, the Court will utilize the earlier date on which Petitioner apparently signed the application, January 24, 2013, as the earliest date upon which he potentially gave it to prison officials for mailing.   In addition, unless otherwise noted, the Court in hereafter referencing the dates of filing of Petitioner's pleadings in the state courts and in this Court will utilize the dates that Petitioner apparently signed his respective pleadings as the dates of filing thereof in the respective courts.

3      Also included in Petitioner's claims Nos. 1 and 3 were the assertion that his attorney provided ineffective assistance by failing to obtain and produce either Petitioner's high school records (relative to Petitioner comprehension of his waiver of rights during questioning) or

objections and an Answer addressing Petitioner's claims in the PCR application.[4]   On June 6, 2013, the State Court Commissioner issued a Report recommending that Petitioner's claims (as re-characterized, *see* note 4) be denied.   On July 25, 2013, the trial court adopted the Commissioner's Recommendation and dismissed Petitioner's PCR application.

On or about September 10, 2013, Petitioner filed an application for supervisory review in the Louisiana First Circuit Court of Appeal, which court denied review on November 21, 2013. *State v. Sadler*, 2013 WL 12125625 (La. App. 1 Cir. Nov. 21, 2013).   Petitioner thereafter sought further review before the Louisiana Supreme Court on December 18, 2013, which Court also denied review, without comment, on September 12, 2014.   *State ex rel. Sadler v. State*, 147 So.3d 702 (La. 2014).

Petitioner submitted his federal habeas corpus application for filing herein on or about October 19, 2014.   Petitioner asserts the following grounds for relief:

| | |
|---|---|
| Ground One: | His conviction was obtained as a result of a non-unanimous jury verdict in violation of the Louisiana and federal Constitutions; |
| Ground Two: | His waiver of the rights guaranteed under *Miranda v. Arizona, supra*, was not knowing and intelligent because he could not "read, write, nor understand and comprehend intelligently and rationally" these rights, and his trial attorney provided ineffective assistance by failing to adequately present this claim at a hearing on a pre-trial motion to suppress; |
| Ground Three: | The prosecution engaged in misconduct by exceeding the scope of rebuttal during closing arguments and by |

criminal and toxicology records of the victim (relative to Petitioner's theory of self-defense).
4      The State's Opposition re-characterized Petitioner's claims as being (1) a claim relative to the knowing and voluntary waiver of his *Miranda* rights, (2) a claim of prosecutorial misconduct during closing arguments, (3) a claim of ineffective assistance of counsel in failing to obtain and introduce the criminal and toxicology records of the victim, and (4) a claim of ineffective assistance of counsel in failing to obtain and introduce Petitioner's high school records at a scheduled pre-trial suppression hearing.

commenting upon DNA evidence that had not been presented at trial; and

Ground Four:     He is in fact innocent of the charged offense in light of Louisiana's self-defense doctrine.   Petitioner further asserts that this claim was never addressed by the state courts during post-conviction review proceedings.

## II. Factual Summary

The facts, as summarized in the opinion of the Louisiana Court of Appeal for the First

Circuit, are as follows:

On December 22, 2008, at approximately 7:00 p.m. the victim, Cary Ray Dungan, picked up his friend, Robert O'Connell, and went to Lambert's bar in Baton Rouge to celebrate O'Connell's birthday.   Kacey Atkinson, a female acquaintance of Dungan's, later met the men at the bar.   According to Atkinson, she often went out with Dungan in exchange for monetary payment.   Later that night, the group left Lambert's and went to Dancer's nightclub on Airline Highway.   While at the club, Dungan used cash to purchase drinks for his friends.

At sometime thereafter, Atkinson spoke to the defendant on the telephone.   The defendant later arrived at Dancer's and sat in the back of the club.   According to Atkinson, the defendant stayed at Dancer's for approximately fifteen to twenty minutes and then he left.   The defendant did not make any contact with Atkinson at Dancer's.

Eventually, the group left Dancer's, and Dungan drove O'Connell home to his apartment on Sherwood Forest Boulevard.   Atkinson accompanied Dungan. Dungan and Atkinson visited with O'Connell briefly at his home before deciding to leave.   After Dungan and Atkinson exited the apartment, the defendant walked up with a gun and, according to Atkinson, hit Dungan on his head with the gun and demanded that he "get in the truck."   Dungan reached into his vehicle, grabbed a handgun and shot the defendant.   The defendant responded with several gunshots.

The defendant sustained a gunshot wound to his neck and elbow.   Dungan was shot in his upper abdomen, right thigh, and left thigh.   The injury to the abdomen perforated Dungan's colon and left kidney, causing massive hemorrhage to his abdomen. The injury was fatal.

The defendant initially denied shooting the victim.   In an initial statement to the police, the defendant claimed that he and two other individuals followed Dungan from Dancer's and planned to rob him.   The defendant claimed one of his accomplices shot the victim and the defendant ran away.   The defendant later confessed to shooting Dungan and admitted that he acted alone.   He claimed that

he simply approached Dungan and ordered him to "freeze."    Dungan then retrieved
a gun from his vehicle and shot the defendant in the neck.    The defendant claimed
he was running away when he started shooting back towards Dungan.

*See State v. Sadler, supra*, 2011 WL 3557836, *1.

   In addition to the foregoing, the evidence adduced at trial reflects that Kacey Atkinson,
who was Petitioner's girlfriend at the time of the shooting and who was living with Petitioner and
knew him well, witnessed the shooting and positively identified Petitioner as the shooter, having
recognized his camouflage clothing, his eyes, his voice, and his manner.    She further testified that
Petitioner was personally aware, having been told by her prior to the night of the shooting, that the
victim often carried substantial amounts of cash when she and the victim were out together.    She
testified that on the night of the shooting, she and the victim were standing in the parking lot
outside Robert O'Connell's apartment talking when Petitioner approached the victim holding a
firearm and instructed the victim to get in the adjacent truck.    When the victim initially demurred,
Petitioner hit him in the head with the firearm.    The victim then moved to the door of the vehicle
but instead of getting in as instructed, grabbed his own firearm and began shooting at Petitioner,
whereupon Petitioner returned fire.    Kacey Atkinson confirmed that Petitioner was wearing
camouflage clothing that matched the clothing later found in Petitioner's vehicle.    In addition to
the foregoing, the evidence reflects that during interrogation, Petitioner admitted to having
attempted to rob the victim and to having shot him when the victim produced a weapon.    Petitioner
further advised investigating officers of the location of the weapon used during the incident, which
the officer were able to thereafter recover from Petitioner's mother's house.    Evidence recovered
from the crime scene indicated that Petitioner had fired his weapon approximately 14 times before
it became jammed.

   Based upon the foregoing, the jury returned a verdict finding Petitioner guilty of the

charged offense.

### III. Procedural Defenses Raised by the State

<u>Untimeliness</u>

Initially, the State contends that Petitioner's application before this Court is untimely. In this regard, pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a subsequent properly-filed application for state post-conviction or other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are not any properly-filed post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. *Flanagan v. Johnson,* 154 F.3d 196, 199 n. 1 (5th Cir. 1998). *See also Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998). To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and procedural rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Further, a state application is seen to be "pending" both while it is before a state court for review and also during the interval of time after a state court's disposition while the petitioner is procedurally authorized under state law to proceed to the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In support of the assertion of untimeliness, the State contends that Petitioner failed to meet

the 30-day deadline imposed by state procedural rules for proceeding in the intermediate appellate court after the denial of his PCR application in the state trial court. Specifically, the State contends that Petitioner's PCR application was denied on July 25, 2013, but Petitioner did not file his appellate court writ application until on or about September 10, 2013, more than thirty days later. According to the State, Petitioner's failure to meet this deadline caused *all* of the remaining time during which Petitioner's appellate court proceedings were ongoing to be ineffective to toll the running of the limitations period.

The State's contention in this regard should be rejected. Specifically, as noted above, Petitioner's conviction became final on June 21, 2012, ninety days after entry of the judgment of conviction and upon his failure to file a writ of certiorari in the United States Supreme Court. Petitioner did not thereafter interrupt the running of the limitations period until his filing, on or about January 24, 2013, of an application for post-conviction relief in the state trial court. As a result, a period of two hundred sixteen (216) days of un-tolled time elapsed on the one-year time clock during that interval.

Upon the filing of Petitioner's post-conviction relief application on January 24, 2013, the limitations period became tolled, and it remained tolled until July 25, 2013, on which date the state trial court entered a Ruling denying Petitioner's post-conviction relief application. The time also remained tolled for an additional thirty (30) days thereafter, or until August 24, 2013, because Rule 4–3 of the Louisiana Uniform Rules, Courts of Appeal, allowed Petitioner a period of thirty (30) days from "the date of the ruling at issue" within which to file a timely application for supervisory review in the Louisiana appellate court.[5] Notwithstanding, on August 25, 2013, after passage of the allowable time to seek supervisory review in the intermediate appellate court, the one-year clock commenced again because, "[a]t the point when the [30–day] state limitations period

expired, a petitioner is not entitled to further appellate review, and therefore, he has no application 'pending' in state court." *Melancon v. Kaylo, supra,* 259 F.3d at 407.  Accordingly, when Petitioner did not submit his application for supervisory writs for filing with the First Circuit Court until September 10, 2013, an additional period of sixteen (16) days of un-tolled time elapsed because his application ceased to be "pending" within the meaning of § 2244 after August 24, 2013, the last day upon which he could have timely sought review before the First Circuit Court.

Contrary to the State's assertion, although Petitioner's late-filed application for supervisory review in the intermediate appellate court was untimely, the filing of the application again interrupted the limitations period, and the limitations period remained tolled during the time that the writ application was pending before the intermediate appellate court.   This is because Rule 4–3 of the Uniform Rules of the Louisiana Courts of Appeals has been interpreted by the federal courts as requiring that an intermediate appellate court give "some level of judicial review" to an untimely writ application.  *See Melancon v. Kaylo, supra,* 259 F.3d at 405, *citing Villegas v. Johnson,* 184 F.3d 467, 470 n. 2 (5th Cir. 1999).   Thus, although untimely, Petitioner's late-filed writ application in the intermediate appellate court was then "pending" for consideration before that court and so again tolled the running of the one-year limitations period, and it remained tolled during the time that the writ was pending before the First Circuit Court.  *Melancon v. Kaylo, supra,* 259 F.3d at 407.  *See also Edwards v. Cain*, 2014 WL 3488513, *4 (M.D. La. July 10, 2014).

Upon denial of Petitioner's writ application in the First Circuit Court on November 21, 2013, Petitioner then had thirty (30) days from the date of mailing of the notice of judgment, or until December 21, 2013, within which to file a timely application for supervisory review before the Louisiana Supreme Court.  *See* Louisiana Supreme Court Rule X, § 5(a).  Inasmuch as

Petitioner met that deadline by filing his writ application before that Court on December 18, 2013, his post-conviction proceedings remained pending and tolled for the entirety of the Supreme Court's review.

Finally, upon denial of Petitioner's writ application before the Louisiana Supreme Court on September 12, 2014, the one-year time clock again began to run, and an additional period of thirty-six (36) days of un-tolled time elapsed before Petitioner filed the instant federal habeas corpus application before this Court on or about October 19, 2014. Accordingly, totaling up all of the un-tolled time that was allowed to run from the one-year clock in this case, it appears that only 268 days elapsed (216 + 16 + 36), *i.e.*, less than a year, during which there were no properly filed state post-conviction or other collateral review proceedings pending before Petitioner filed his federal habeas corpus application herein. Accordingly, Petitioner's application before this Court is timely.

<u>Procedural Default As To Petitioner's Claim No. 2</u>

The Court next addresses the State's contention that Petitioner's combined second claim herein, relative to the adequacy of his waiver of *Miranda* rights and the alleged ineffectiveness of his trial counsel in asserting this issue, was rejected on procedural grounds in the state trial court and so is not properly before this Court on habeas review. Specifically, the State asserts that the state court, in rejecting these claims (which were addressed as Claims Nos. 1 and 4 in Petitioner's state PCR application), concluded that they were procedurally barred pursuant to La. Code Crim. P. art. 930.4(B) because Petitioner was aware of these issues prior to conviction but never alerted counsel or the state court relative thereto. *See* R. Doc. 8 at p. 16.

The Court concludes that the State's contention in this regard is not sufficiently well-founded. In this regard, when a state court decision to deny post-conviction relief rests on a state

procedural ground that is independent of the federal question raised by Petitioner and is adequate

to support the judgment, the federal court lacks jurisdiction to review the merits of Petitioner's

federal claim.   *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Moore v. Roberts*, 83 F.3d 699,

701 (5th Cir. 1996).   The independent and adequate state ground doctrine "applies to bar federal

habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner

ha[s] failed to meet a state procedural requirement."   *Coleman v. Thompson, supra*, 501 U.S. at

729-730:

> In the absence of the independent and adequate state ground doctrine in federal
> habeas, habeas petitioners would be able to avoid the exhaustion requirement by
> defaulting their federal claims in state court.   The independent and adequate state
> ground doctrine ensures that the States' interest in correcting their own mistakes is
> respected in all federal habeas cases.

*Id.* at 731-32, *citing Rose v. Lundy*, 455 U.S. 509, 518, (1982); *Moore v. Roberts, supra*, 83 F.3d

at 703.   This rule applies even if the state court addresses the substance of the claim in the

alternative.   *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Fisher v. Texas,* 169 F.3d 295, 300

(5th Cir. 1999).

In order for a state procedural bar to provide an "independent" basis for dismissal, the state

court adjudication of a habeas petitioner's claim must have been explicitly based on a state

procedural rule.   *Amos v. Scott*, 61 F.3d 333, 338 n. 15 (5th Cir. 1995).   *See also Moore v.

Roberts, supra*, 83 F.3d at 702; *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).   To be

"adequate," the state procedural rule must be strictly or regularly followed and evenhandedly

applied to the majority of similar chases.   *Walker v. Martin*, 562 U.S. 307, 1127-28 (2011); *Glover

v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Marks v. Terrell*, 2014 WL 1246065, *8 (E.D. La. Mar.

24, 2014).   The state procedural bar is presumptively adequate when the state court expressly and

regularly relies upon it in deciding not to review claims for collateral relief.   *Glover v. Cain, supra*,

128 F.3d at 902.    Further, the procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment."    *Sones v. Hargett, supra,* 61 F.3d at 416.    Notwithstanding, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.    *See Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).    *See also Johnson v. Lensing*, 1999 WL 562728, *4 (E.D. La. July 28, 1999) (finding that application of procedural rule was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, 1999 WL 518843, *4 (E.D. La. July 20, 1999) (same, where procedural rule was misapplied).    Further, a habeas petitioner may rebut the presumption of adequacy by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice."    *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts, supra*, 83 F.3d at 702.

It appears in this case that there is an arguable basis, but not a strong basis, for concluding that the trial court relied upon a state procedural rule in rejecting Petitioner's claims relative to the voluntariness of his confession and the related ineffective assistance of his attorney.    Specifically, the court arguably relied upon La. Code Crim. P. art. 930.4(B), which provides that "[i]f the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief."    In addressing these issues (Claims Nos. 1 and 4 in Petitioner's PCR application), the state court Commissioner's Report initially noted that the State had asserted the procedural defense relative thereto and was arguing that the claims were "inexcusably omitted from prior filings and therefore violated art. 930.4(B)."    The Commissioner's Report, however, made no further mention of the procedural article and

thereafter conducted a substantive analysis relative to these claims, and it was only at the conclusion of the Report that the Commissioner stated that "for the reasons stated hereinabove, in accordance with [Article 930.4]," "it is the recommendation of this Commissioner that the State's procedural objections should be granted." The state trial judge thereafter dismissed Petitioner's PCR application on July 25, 2013, stating that "[t]he court finds adequate and adopts as its own the reasons set forth in the Commissioner's Recommendation." Thus, it appears that the state court arguably relied upon the referenced procedural rule in rejecting Petitioner's claims. However, not only is it difficult for this Court to conclude that such reliance was sufficiently explicit and express, based upon the lack of any discussion or a reasoned reliance on the procedural rule in the Commissioner's Report, but for the reasons stated below, the Court further finds that the court's reliance upon the referenced procedural article is misplaced, and therefore inadequate, under the facts of this case.

In the first place, relative to Petitioner's claim regarding the voluntariness of his confession, article 930.4(B) addresses the circumstance where a petitioner's claim is one "of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction." In the instant case, however, Petitioner did in fact assert the instant claim in the proceedings leading to conviction. Specifically, his attorney filed a pretrial Motion to Suppress (Tr. Rec., Vol. I, p. 9) wherein he specifically asserted that Petitioner's statements given to investigating police officers were not knowingly and intelligently given. During the ensuing evidentiary hearing, the officers were questioned regarding the events leading up to Petitioner's arrest and to their having obtained Petitioner's statements and consents. *See* Tr. Rec., Vol. II, pp. 218-262. Both officers testified to having advised Petitioner of his *Miranda* rights and to having questioned whether Petitioner understood those rights. Both officers testified that Petitioner responded that he did understand.

Both officers further testified that Petitioner was sitting up in a hospital bed at the time, that he appeared to be fully aware and coherent, that he responded appropriately to their questions and appeared to consider and understand them, and that he was not slurring his words or otherwise acting in a manner consistent with incomprehension.   Finally, Detective Todd Morris testified that Petitioner subsequently signed a consent form signifying his understanding of his rights and his agreement to participate in questioning.   *See* Tr. Rec., Vol. I, p. 75.   The referenced consent form further reflects that Detective Morris obtained information from Petitioner regarding his educational background ("high school graduate") and pertinent history, including that he was 27 years of age, that he could read and write, that he denied alcohol or drug use, and that he denied a history of mental illness.   *See id.*   Petitioner also signed a consent form allowing officers to take DNA swabs for testing.   *See id.* at p. 76.   Whereas Petitioner's attorney attempted during the hearing to call into question the voluntariness of the respective consent forms, by posing questions related to Petitioner's drug and alcohol use on the night of the shooting, to his having potentially been given pain medication at the hospital, and to his ability or inability to understand the rights explained to him (including a reference to "special education" classes), the trial judge ultimately denied the Motion to Suppress, concluding that Petitioner's statements were knowing and voluntarily given.

Based on the foregoing, it appears clear that the instant claim was in fact asserted in the "proceedings leading to conviction" and was not "inexcusably omitted" from consideration.[5] Accordingly, to the extent that the state trial court relied upon La. Code Crim. P. art. 930.4(B) in

---

[5]   Whereas the State characterizes Petitioner's Motion to Suppress as asserting only a claim relative to Petitioner's inability to voluntarily consent to questioning because of the potential effects of pain and/or medication, this Court finds from the record of the hearing that the broader question of Petitioner's ability to understand and comprehend his *Miranda* rights based upon his educational background and basic comprehension skills was also included.

rejecting consideration of this claim, such reliance appears to have been misplaced.   As a result, this Court is reluctant to find that article 930.4(B) constitutes an independent and adequate basis for rejection of this claim.[6]

Turning to Petitioner's related claim relative to the alleged ineffectiveness of his trial attorney in presenting the issue of the voluntariness of his incriminatory statements, this Court similarly concludes that article 930.4(B) fails to sufficiently constitute an independent and adequate procedural basis for rejection of this claim.   Not only does the Report of the state court Commissioner, as discussed above, fail to sufficiently clearly and expressly rely upon this article in rejecting Petitioner's claim, but as a general and oft-stated rule, Louisiana courts do not require that a petitioner present his claims of ineffective assistance of counsel either at trial or on direct appeal and instead allow such claims to be presented initially on post-conviction review as was done in the instant case.   *See Coleman v. Goodwin*, 833 F.3d 537, 542 (5th Cir. 2016) (noting (1) that Louisiana courts have "repeatedly held that [ineffective assistance] claims should typically be brought in collateral proceedings, and if a claim is brought on direct appeal and the court determines that it cannot be decided on the record, the court will direct that it be brought in a collateral proceeding," and (2) that "several Louisiana state criminal-practice guidelines urge that [ineffective assistance] claims are best brought in post-conviction proceedings").   Accordingly, to the extent that the state trial court relied upon article 930.4(B) in rejecting consideration of this claim, which article precludes consideration of issues omitted from the "proceedings leading to

---

6      Had the trial court relied upon La. Code Crim. P. art. 930.4(C) instead of article 930.4(B) relative to this claim, this Court's determination would arguably be different.   Article 930.4(C) precludes consideration of post-conviction relief claims that were raised in the trial court but were inexcusably omitted from a petitioner's appeal.   In the instant case, Petitioner raised in the trial court the issue of the voluntariness of his confession, but he did not present this claim on direct appeal and instead only asserted a claim regarding the non-unanimous jury verdict.

conviction," such reliance does not appear to be a fair and evenhanded application under the facts of this case. *See Walker v. Martin*, *supra*, 562 U.S. at 1127-28. As a result, this Court is unwilling to conclude that this issue is procedurally defaulted and will substantively address it below.

### III. Substantive Review - Applicable Law and Analysis

<u>Standard of Review</u>

Turning to a substantive consideration of Petitioner's claims, the standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively

unreasonable").   State court determinations of underlying factual issues are presumed correct, and Petitioner has the burden to rebut the presumption with clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011).   Review under § 2254(d)(1) focuses on what a state court knew and did.   *Cullen v. Pinholster, supra*, 563 U.S. at 182.   "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review.   If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court."   *Id*. at 184.   State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).   *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d).   *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[7]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court.   *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably

---

[7]       The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law.   *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

applies that principle to the facts of the prisoner's case." *Id.* at 413.

The State contends that, applying this standard to Petitioner's claims, there is no basis for the granting of habeas corpus relief.

Petitioner's Claim No. 1, Regarding His Conviction
<u>Pursuant To A Non-Unanimous Jury Verdict, Is Without Merit</u>

Petitioner first asserts that his conviction pursuant to a verdict rendered by a non-unanimous jury (that was split 10-2 in favor of conviction) is unconstitutional under the state and federal constitutions. This claim is clearly without merit. The constitutionality of non-unanimous verdicts in this context has been repeatedly upheld by both the state and federal courts. *See, e.g., State v. Bertrand*, 6 So.3d 738 (La. 2009) and *Apodaca v. Oregon*, 406 U.S. 404 (1972). In this regard, Louisiana law provides that a criminal matter in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to reach a verdict. La. Code. Crim. P. art. 782(A). Although Petitioner suggests that the *Apodaca* holding, that non-unanimous jury verdicts do not violate a defendant's constitutional rights, has been called into question by the more recent decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), this contention is without merit. Since deciding *Apodaca*, the United States Supreme Court has repeatedly declined to grant certiorari to reconsider the constitutionality of non-unanimous jury verdicts in state proceedings. *See, e.g., Barbour v. Louisiana,* 562 U.S. 1217 (2011); *Herrera v. Oregon,* 562 U.S. 1135 (2011); *Jackson v. Louisiana,* 134 S.Ct. 1950 (2014)*. See also McDonald v. City of Chicago*, 561 U.S. 742, 765 n. 14 (2010) ("The Court has held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials"). As such, the law as stated in *Apodaca* remains settled, and Petitioner can claim no violation of state or federal law resulting from his conviction by a non-unanimous jury.

Petitioner's Claim No. 2, Regarding The Admissibility Of His Confession
And The Alleged Ineffectiveness Of His Attorney In
<u>Challenging The Admissibility Of His Confession, Is Without Merit</u>

Petitioner next asserts that the incriminating statements provided by him to police officers on the night of his arrest were not voluntarily and intelligently given and were instead obtained through an invalid waiver of his constitutional rights as recognized in *Miranda v. Arizona*, *supra*. Petitioner further asserts the related claim that he was provided with ineffective assistance of counsel at trial because his attorney failed to adequately show that, as a consequence of Petitioner's limited ability to read, understand and comprehend, his waiver of the right to counsel and to remain silent during questioning by police officers was invalid.

Addressing first Petitioner's claim relative to the admissibility of the statements and consents given by him to police officers on the night of the shooting, the law is clear that a criminal defendant's waiver of his *Miranda* rights during police questioning must be knowing, intelligent, and voluntary.  *See James v. Cain*, 468 Fed. Appx. 401 (5th Cir. 2012).  These are distinct inquiries that "look to the totality of the circumstances" in each case.  *Id.*  In the instant case, Petitioner effectively contends that his incriminatory statements did not meet this test because he has a limited ability to read, write or understand the English language.  Notwithstanding, these are conclusory statements that are not borne out by evidence in the record.  As discussed above, an evidentiary hearing was conducted on Petitioner's Motion to Suppress these statements, and the investigating police officers testified that Petitioner was awake and alert, that he was advised of his rights, that he signified that he understood his rights, and that he agreed to speak to the officers. According to the testimony elicited at the hearing, Petitioner further signified that he was 27 years of age, that he was a high school graduate, that he had no history of mental illness, that he could read and write, and that he was not under the influence of drugs or alcohol.  According to the

officers, Petitioner at all times appeared to be coherent, to consider and understand the questions posed to him, and to be able to respond appropriately thereto.   In fact, according to the testimony adduced at the hearing, Petitioner initially presented a reasoned story that laid blame for the shooting on two accomplices, with Petitioner asserting that he ran from the offense without firing a weapon.   The trial judge then listened to Petitioner's recorded statements and summarily denied Petitioner's Motion to Suppress, effectively finding the statements to have been freely and voluntarily given.   There is no suggestion in the record that the judge, in listening to Petitioner's statements during the recording, had any question about Petitioner's coherence or his apparent awareness and understanding of the nature of the proceedings.   Nor is there any suggestion that inherently coercive tactics were utilized by the investigating officers during questioning.

Based on the foregoing and considering the substantial deference that is owed to the determination of the state trial court, this Court finds no error in the conclusion of the state court that Petitioner has failed to establish that his waiver of *Miranda* rights in this case was not freely and voluntarily given based upon a knowing and intelligent understanding thereof.   In support of his contrary assertion, Petitioner appears to focus entirely upon the fact that excerpts from his high school records reflect that his intelligence was limited and that he attended "special education" classes.   However, these records further indicate that Petitioner ultimately graduated from high school in 2000 and that in April of that year, he had an "A" grade in English and was "completing all assignments" at that time, notwithstanding that his "reading and writing skills [were] reported to be below average."   *See* attachments to Petitioner's PCR application, R. Doc. 11.   This is not indicative of a person who is unable to read, write or understand the English language.   In addressing this issue, the trial court Commissioner's Report provides:

> Petitioner claims alleges that the confession he gave the police was tainted because he was unable to understand those rights because of his lack of

comprehensive skills; he further claims that he would not have been found guilty by the jury had the confession be [sic] suppressed.

The state argues that this argument was heard by the trial court during the motion to suppress hearing.  (R. pp. 8-11).  Detectives Richard Decuir and Todd Morris (EBRSO) told the court that they found Petitioner at OLOL hospital; he was advised of his Miranda rights and Petitioner responded that he understood those rights.  At no point during that interview or any subsequent interviews did Petitioner give any indication that he could not understand the rights guaranteed to him by the Constitution.  The trial court denied the motion to suppress finding no merit in Petitioner's claim.

This Commissioner agrees with the State that the confession was properly obtained and that there was no indication that Petitioner could not understand his rights.  Moreover, when Petitioner signed the consent forms he indicated that he was a high school graduate and was able to respond to questions in English.  This claim should be dismissed and the State's objections should be granted.

*See* Commissioner's Report at p. 3, attachment to R. Doc. 9.  This Court finds no error in the application of federal law relative to this conclusion.

Petitioner further contends that his attorney provided ineffective assistance by failing to adequately show the state trial court the extent of his deficiencies in reading, writing and comprehension so as to establish the involuntariness of his incriminating statements.  In this regard, a habeas petitioner who asserts that he has been provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel.  *Id*.

To satisfy the deficiency prong of the *Strickland* standard, Petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by

prevailing professional standards.   *See, e.g., Brown v. Dretke*, 419 F.3d 365, 374 (5th Cir. 2005).

The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide

range of reasonable professional competence and that, under the circumstances, the challenged

action might be considered sound trial strategy.   *See id.   See also Bridge v. Lynaugh*, 838 F.2d

770, 773 (5th Cir. 1988).   This Court, therefore, must make every effort to eliminate the distorting

effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.

*Strickland v. Washington, supra*, 466 U.S. 689; *Martin v. McCotter,* 796 F.2d 813, 817 (5th Cir.

1986).   Great deference is given to counsel's exercise of professional judgment.   *Id.*

      If Petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must

affirmatively demonstrate prejudice resulting from the alleged errors.   *See Premo v. Moore*, 562

U.S. 115, 122 (2011) ("To establish ineffective assistance of counsel, 'a defendant must show both

deficient performance by counsel and prejudice").   To satisfy the prejudice prong of the

*Strickland* test, it is not sufficient for Petitioner to show that the alleged errors had some

conceivable effect on the outcome of the proceeding.   *Strickland v. Washington, supra*, 466 U.S.

at 693.   Rather, Petitioner must show a reasonable probability that, but for counsel's alleged

errors, the result of the proceeding would have been different.   *Williams v. Taylor*, 529 U.S. 362,

391 (2000).   A habeas petitioner need not show that his counsel's alleged errors "more likely than

not" altered the outcome of the case; he must instead show a probability that the errors are

"sufficient to undermine confidence in the outcome."   *Id.*   Both the *Strickland* standard for

ineffective assistance of counsel and the standard for federal habeas review of state court decisions

under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review

by federal courts is "doubly deferential."   *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

      The above showing is one that Petitioner cannot make in the instant case.   Petitioner

principally asserts in this regard that his trial attorney failed to show the state court the extent of his educational deficiencies by failing to introduce his high school records at the hearing on his motion to suppress the incriminating statements.  According to Petitioner, these records would have established that he was unable to knowing and intelligently understand and waive his constitutional rights.  Notwithstanding, the Court is unable to conclude that the failure to obtain and introduce these records falls outside the "wide range of reasonable professional assistance" that *Strickland* establishes as the standard for deficient performance by an attorney.  *See Garcia v. Stephens*, 793 F.3d 513, 524 (5th Cir. 2015).  Contrary to Petitioner's suggestion that his attorney failed to attack the admissibility of Petitioner's incriminating statements, *see* R. Doc. 1-1 at p. 6, it is clear that the attorney did in fact file a motion to suppress and, at a hearing conducted in connection therewith, actively challenged the waiver of *Miranda* rights and the voluntariness of the statements and consents.  During cross-examination, Petitioner's attorney explored the officers' perceptions that Petitioner actively understood and consented to engage in the questioning and also explored the possibility that Petitioner's consent may have been impacted by pain medication administered at the hospital, by prior alcohol and drug use, and/or by educational limitations.  As noted above, Detective Todd Morris affirmatively ascertained from Petitioner that he was a high school graduate, that he had no history of mental illness, that he was not under the influence of drugs or alcohol, and that he had an ability to read and write the English language.  As such, this Court is unable to conclude that the failure of Petitioner's attorney to introduce Petitioner's high school records from eight years previously rises to the level of deficient performance sufficient to warrant a finding of ineffective assistance of counsel.  *See Garcia v. Stephens, supra* (noting that the mere filing of a motion to suppress and the pursuit of a line of inquiry relative to the petitioner's ability to knowingly consent to questioning "arguably place[d]

counsel's conduct within 'the wide range of reasonable professional assistance'" relevant to the *Strickland* analysis).

In addition to the foregoing, the Court also finds that Petitioner has failed to adequately show that he was prejudiced by his attorney's alleged failure or that the result of the proceedings likely would have been different had the referenced high school records been introduced.   As noted in the Commissioner's Report and as pointed out by the State, these records reflect that Petitioner graduated from high school and exhibited sufficient proficiency in April 2000 to maintain an "A" grade in English and to complete all of his assignments.   There is therefore little likelihood that the introduction of Petitioner's school records would have altered the conclusion of the trial court that Petitioner's statements were freely, intelligently and voluntarily given. Further, considering the substantial weight of evidence pointing to Petitioner's guilt, including the eyewitness identification of Petitioner as the shooter, there is little likelihood that the introduction of Petitioner's high school records at the hearing on his motion to suppress would have altered the jury's verdict or the outcome of the case.   Accordingly, Petitioner's claim in this regard should be rejected.

Petitioner's Claim No. 3, That The Prosecution Engaged In
<u>Misconduct During Closing Argument On Rebuttal, Is Without Merit</u>

Petitioner next asserts that the state district attorney engaged in prosecutorial misconduct during closing arguments that resulted in prejudice to Petitioner.   Specifically, Petitioner asserts that the prosecution, during the rebuttal portion of closing arguments, exceeded the scope of permissible rebuttal argument and made reference to DNA evidence that had not been presented during trial.    Specifically, on rebuttal, the prosecutor made the following statement: "The DNA evidence that was recovered at the scene, as it relates to Cary [Dungan, the victim], I think is important," whereupon Petitioner's attorney interjected, stating, "I want to object as this being

beyond the scope of State's closing.   I never talked about DNA at all."   *See* Tr. Rec., Vol. 4, p. 835.   After a bench conference, the trial court overruled the objection, whereupon the prosecutor commented further about where the victim's blood had been found in relation to his adjacent vehicle.   No further mention of "DNA" evidence, as such, was made, and the prosecutor limited her comments to pointing out the location at the scene of blood evidence that matched the blood of the victim.   Petitioner contends, however, that in addition to exceeding the allowable scope of rebuttal argument, the prosecutor's comments were false because, according to Petitioner, there was no evidence admitted at trial regarding "Petitioner's fingerprints and blood … found at the scene of the crime."   *See* R. Doc. 1-1 at p. 7.

Petitioner's contention in this regard is clearly without merit.   Initially, with regard to Petitioner's claim that the prosecutor exceeded the allowable scope of rebuttal argument, this is purely a matter of state law that is not properly before this Court on federal habeas review.   In this context, the Court begins with the premise that a federal habeas court provides relief only when a state petitioner is found to be in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   Thus, a federal habeas court asks only whether a constitutional violation infected the trial.   *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).   In other words, an error in the application of state law by the trial court does not provide grounds for habeas relief.   *Engle v. Isaac,* 456 U.S. 107, 119 (1982).   Accordingly, to the extent that the foundation of Petitioner's claim rests on the proper interpretation and application of state jurisprudence and rules of evidence relative to the proper scope of rebuttal argument, this is not an issue within the purview of federal habeas corpus review.

Further, from a substantive standpoint, the prosecutor's comments relative to DNA

evidence and the location of blood evidence found at the scene of the shooting does not appear to have been improper or misleading in any event.    Specifically, a forensic expert was in fact called to testify on behalf of the State, and whereas the witness' DNA report was not admitted into evidence, the expert testified with regard to DNA samples having been obtained from both Petitioner and from the victim and with regard to the victim's blood having been found at the scene of the shooting.    *See* Tr. Rec. pp. 718-37.    Contrary to Petitioner's assertion, the comments made by the prosecutor during closing arguments were solely relative to where the blood of the *victim* was found in relation to the vehicle at the scene.    The prosecutor made no assertion in closing that Petitioner's blood or fingerprints were found at that location.    Thus, Petitioner's assertion to the contrary, regarding the making of false, unsupported and prejudicial statements regarding his "fingerprints and blood … found at the scene of the crime" appears to be misplaced.    For this reason, Petitioner's contention in this regard should be rejected.

Finally, in the alternative, and turning to a consideration of the prosecution's conduct within the context of the entire trial, the Court does not find that the prosecutor's comments during closing rise to the level of error that rendered Petitioner's trial fundamentally unfair.    In this regard, pursuant to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), "a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict."    *Nixon v. Epps*, 405 F.3d 318, 329-30 (5th Cir. 2005). *See also Anderson v. Warden, Louisiana State Penitentiary*, 2013 WL 1405423, *3 (W.D. La. Mar. 19, 2013) ("[E]rrors in the form of improper prosecutorial comment or jury instructions are subject to harmless error analysis [under *Brecht*] … which asks whether the error had a substantial and injurious effect or influence in determining the jury's verdict").    Based upon a review of the record, the Court does not find that the prosecutor's comments, evaluated in the context of the

entire trial, were so persistent or pronounced that they permeated the entire atmosphere of the trial,

violated Petitioner's substantial rights, or infected the trial with unfairness.    Further, to the extent

that these comments were objectionable, the Court is unable to conclude that they rendered

Petitioner's trial fundamentally unfair.    "A criminal defendant seeking a reversal of his conviction

for prosecutorial misconduct 'bears a substantial burden,'" and the Fifth Circuit has declined to

reverse convictions even where the prosecutor's comments were admittedly inflammatory.

*United States v. Delgado*, 672 F.3d 320, 337 (5th Cir. 2012), *quoting United States v. Virgen-*

*Moreno*, 265 F.3d 276, 290 (5th Cir. 2001).    As stated in *United States v. Delgado, supra*:

> Overturning a jury verdict for prosecutorial misconduct is appropriate only when,
> taken as a whole in the context of the entire case, the prosecutor's comments
> prejudicially affect[ed the] substantial rights of the defendant.    In determining
> whether the defendant's substantial rights were affected, we consider three factors:
> (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the
> efficacy of any cautionary instruction by the judge, and (3) the strength of the
> evidence supporting the conviction.    If the evidence to support a conviction is
> strong, then it is unlikely that the defendant was prejudiced by improper arguments
> of the prosecutor and reversal is not required.

*Id*. at 337 (citations and internal quotation marks omitted).    In the instant case, the Court finds,

as stated above, that the prosecutor's comments were neither persistent nor pronounced, were

based upon inferences drawn from evidence in the record, and were principally made in responding

on rebuttal to the defense's argument that the offense had been committed in self-defense.

Further, the evidence against Petitioner was substantial in any event, with eye-witness testimony

from Petitioner's ex-girlfriend (Kacey Atkinson) and with Petitioner's admission to involvement

in the offense.    Accordingly, in evaluating the prosecutor's comments in the context of the trial

as a whole, this Court is unable to conclude that the referenced comments by the prosecutor had a

substantial or injurious effect upon the verdict in this case or that the state court made an

unreasonable determination in concluding that this claim did not have merit.

Petitioner's Claim No. 4, That He Is In Fact Innocent Of The Charged Offense
Based Upon An Application Of Louisiana's Self-Defense Doctrine, Is Without Merit

Finally, Petitioner asserts that the evidence at trial established that he was retreating from the victim at the time of the shooting and that he is therefore entitled to relief from culpability based on the doctrine of self-defense. Petitioner further asserts that this claim was not addressed by the state courts on either direct or collateral review. The Court interprets this claim to be an assertion that the evidence at trial was not sufficient to meet the State's burden of proof and overcome his assertion of self-defense.

The standard for testing the sufficiency of the evidence on federal habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989). This standard of review applies in both direct and circumstantial evidence cases. *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012). In reviewing the sufficiency of the evidence under this standard, the federal habeas court must defer to the state court fact-finder's evaluation of the credibility of witnesses and the resolution of conflicts in the evidence. *Knox v. Butler, supra*, 884 F.2d at 851. *See also Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Hosey v. Goff*, 2013 WL 1500883, *2 (S.D. Miss. March 11, 2013). Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence adduced at the petitioner's state court trial. *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005); *Knox v. Butler, supra*, 884 F.2d at 852 n. 7. State law defines the substantive elements of the offense, and a state judicial determination that the evidence was sufficient to establish the elements of the offense is entitled to great weight on federal habeas review. *Dickinson v. Cain*, 211 F.3d 126, *5 (5th Cir. 2000); *Hawkins v. Lynaugh*, 844 F.2d 1132, 1134 (5th Cir. 1988).

In attacking the sufficiency of the evidence in this case, Petitioner asserts that there was insufficient evidence to meet the State's burden of establishing that he was not acting in self-defense when he shot the victim.   In doing so, he points to evidence suggesting that he was retreating from the victim when he fired the shots that resulted in the victim's death, specifically (1) that Petitioner was struck twice by bullets fired from the victim's handgun, once in the back of his elbow and once in the back of his neck, with both bullets striking him from behind, (2) that Petitioner's ex-girlfriend testified that Petitioner was firing as he moved away from the victim's vehicle, and (3) that the pattern of shell casings from Petitioner's firearm also indicated that he was moving away from the vehicle.   Notwithstanding, it is not the function of a reviewing court to determine what the jury could have found if only it had viewed the evidence differently. Instead, the court's role is to determine whether the evidence, viewed in a light most favorable to the prosecution, was sufficient to prove every element of the offense beyond a reasonable doubt. In addition, as noted above, this Court is limited to determining whether the Louisiana courts unreasonably applied the due process standards of *Jackson v. Virginia, supra*, in affirming Petitioner's convictions.   Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue shall be presumed correct, and Petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.

Under Louisiana law, a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.   La. R.S. 14:20(1).   However a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.   La. R.S. 14:21.   *See*

*Washington v. Cain*, 2006 WL 3412321, *1 (W.D. La. Oct. 5, 2006).   Under Louisiana law, when a criminal defendant claims self-defense, the State has the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense.   *State v. Scales*, 655 So.2d 1326 (La. 1995).

        In light of the foregoing standard, and viewing the evidence in the light most favorable to the prosecution, it is largely undisputed that Petitioner was the aggressor in the initial confrontation with the victim inasmuch as, according to his incriminatory statements and the eye-witness testimony of Kacey Atkinson, Petitioner approached the victim with a firearm and instructed the victim to get into the adjacent vehicle.   When the victim hesitated, Petitioner reportedly struck the victim in the head with the firearm.   There is no suggestion in the record that Petitioner thereafter made any attempt to withdraw or retreat from the conflict until the victim himself produced his own firearm, whereupon, during an ensuing exchange, both parties fired their weapons.   Whereas Petitioner may indeed have attempted to retreat in response to the unexpected appearance of the victim's firearm and may indeed have fired backward as he attempted to avoid the opposing fire, the jury need not have concluded from this that Petitioner was withdrawing "in good faith" from the conflict that he created under circumstances indicating to the victim that the conflict was over and that Petitioner was no longer a threat.   For example, there was no testimony indicating that Petitioner verbally signified to the victim that Petitioner was voluntarily retreating, and there was no testimony indicating that any appreciable lapse of time occurred that would have allowed the victim to infer that Petitioner was doing so.   To the contrary, there was ample evidence before the jury from which it could have concluded that, as the aggressor up until another gun appeared, Petitioner created the situation that resulted in both parties exchanging gunfire, and the situation allowed no reasonable opportunity for the victim to conclude that Petitioner had withdrawn from

the conflict.    Accordingly, based on the foregoing, this Court concludes that there was sufficient evidence for the jury to find that Petitioner was guilty of the charged offense and that he has not shown that he is entitled to the benefit of a claim of self-defense.    Therefore, Petitioner's contention is without merit relative to this claim.[8]  *See, e.g., State v. Scales, supra* ("[D]efendant, armed with a revolver, … went to the Church's restaurant to commit a robbery….  Since the evidence indicates that defendant brought on a difficulty by engaging in an armed robbery at the time of the shooting, he cannot claim the right of self-defense"); *State v. Hopkins*, 774 So.2d 1178 (La. App. 2 Cir. 2000) (same).

Based on the foregoing, the Court concludes that Petitioner's application for habeas corpus relief should be denied.

## Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).   Although the Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).   A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §

---

8    Whereas Petitioner contends that the state courts have failed to address his claim regarding his "actual innocence" based upon the doctrine of self-defense, the Court concludes that the state court Commissioner's Report implicitly addressed this issue, noting that "Petitioner admitted in his taped confession that he was trying to rob the victim," that "[t]he eye-witness testified that Petitioner was the aggressor," and that, "[t]hus, the jury found that Petitioner's claim of self-defense was unpersuasive".  *See* Commissioner's Report, p. 6.   In any event, it appears that there was clearly sufficient evidence before the jury in this case to support a finding that Petitioner was not entitled to assert self-defense, having created the situation by engaging in an attempted armed robbery and by acting as the aggressor in a confrontation that led to gunfire and to the death of the victim.

2253(c)(2).   In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   In the instant case, the Court finds that reasonable jurists would not debate the denial of the Petitioner's § 2254 application or the correctness of the substantive ruling.   Accordingly, it is appropriate that, in the event that the Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

<u>RECOMMENDATION</u>

It is recommended that Petitioner's application for habeas corpus be denied, and that this proceeding be dismissed, with prejudice.   It is further recommended that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on February 26, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**